UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | 3:24-CR-71-KAC-JEM-3 |
| JALEN MCMILLIAN, | ) | |
| Defendant. | ) | |

### **MEMORANDUM OPINION & ORDER DENYING MOTION**

Before the Court is the "Motion for De Novo Review and Revocation of Detention Order" filed by Defendant Jalen McMillian (3) [Doc. 102]. The Court denies Defendant's Motion because (1) no potential conflict of interest warrants a new detention hearing and (2) under 18 U.S.C. § 3145(b), no condition or combination of conditions would reasonably assure the appearance of Defendant as required and the safety of any other person and the community.

**I.** **Background**

On June 20, 2024, a Eastern District of Tennessee grand jury issued an Indictment charging Defendant with (1) conspiring to distribute 400 grams or more of a mixture and substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A) (Count One); (2) aiding and abetting the possession with intent to distribute 400 grams or more of a mixture and substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 2 (Count Three); (3) aiding and abetting the possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(a) and 2 (Count Four); and (4) knowingly possessing a firearm and ammunition "after

having been convicted of a crime punishable by a term of imprisonment exceeding one year," in violation of 18 U.S.C. § 922(g)(1) (Count Six) [Doc. 3 at 1-3].

On June 27, 2024, law enforcement arrested Defendant in the Eastern District of Michigan [*See* Doc. 11 at 1]. On July 2, Defendant and Codefendant Anthony Wilcox appeared before Magistrate Judge Anthony P. Patti in the Eastern District of Michigan for a joint detention hearing [*See* Doc. 102-1]. At the start of the hearing, counsel informed the Court that he would represent both Defendant and Codefendant Wilcox at the detention hearing [*See id* at 3-4]. Shortly thereafter, Judge Patti engaged Defendant in the following colloquy:

> THE COURT: Okay. Mr. McMillian, do you understand that you and Mr. Wilcox may have different interests in this case?
> DEFENDANT McMILLIAN: Yes.
> THE COURT: And do you understand that because you have different interests in this case, that it might make sense for the two of you to have a different attorney representing you?
> DEFENDANT McMILLIAN: Yes, Your Honor. It's only for this hearing.
> THE COURT: Well, I understand, but you understand that even in this hearing you could have different interests?
> DEFENDANT McMILLIAN: Yes.
> THE COURT: And you still wish to go forward with the same attorney that Mr. Wilcox has?
> DEFENDANT McMILLIAN: Yes.
> THE COURT: All right. And you're waiving any conflict of interest that might -- there might be in having the same counsel?
> DEFENDANT McMILLIAN: Yes.

[Doc. 102-1 at 5-6]. After establishing that Defendant knowingly and voluntarily waived his right to separate counsel,[1] the Court heard argument and evidence from the Parties regarding detention [*See generally* Doc. 102-1].

Judge Patti ultimately concluded that the United States established "by clear and convincing evidence that no condition or combination of conditions can reasonably assure the

---

[1] Judge Patti engaged Codefendant Wilcox in a nearly identical colloquy and accepted his knowing and voluntary waiver too.

safety of the community," and ordered Defendant detained [*See id.* at 57; Doc. 11 at 13-15]. Thereafter, Defendant was transferred to the Eastern District of Tennessee, where he remains detained [*See* Doc. 11 at 16].

On August 17, 2025 Defendant filed the instant Motion, which seeks (1) a new detention hearing, or (2) in the alternative, an order "revo[king] . . . the Michigan order of detention" and releasing Defendant on conditions [Doc. 102 at 16]. ***First***, Defendant argues that he is entitled a new detention hearing because his "shared counsel" at the initial detention hearing presented a conflict of interest in violation of the Sixth Amendment [*See id.* at 7-9]. ***Second***, he argues that the Court should revoke the detention order and release him on conditions because, among other things, (1) his sole prior "felony" conviction was "not punishable by more than one year" imprisonment (and thus, he "anticipates the Government will strike. . . [Count Six] prior to trial") and (2) neither his history nor the charges against him in the Indictment include violence [*Id.* at 12-13]. Defendant proposes his sister as a "third-party custodian" if the Court were to release him [*Id.* at 13]. The United States opposed the Motion, noting the nature and circumstances of the alleged offenses, the evidence against Defendant, and Defendant's history and characteristics, among other things [*See* Doc. 108].

II.     **Analysis**

   **A. No Potential Conflict Of Interest Warrants A New Detention Hearing.**

As an initial matter, Defendant is not entitled to a new detention hearing because he knowingly, intelligently, and voluntarily waived any potential conflict of interest at his initial detention hearing. A defendant generally has a Sixth Amendment right to conflict-free counsel at a detention hearing. *See Mickens v. Taylor*, 535 U.S. 162, 171 (2002) (noting that the Sixth Amendment only protects against those conflicts that "adversely affect[] counsel's performance").

3

However, a defendant may waive that right, where the waiver is "knowing, intelligent, and voluntary." *United States v. Davis*, 490 F.3d 541, 548 (6th Cir. 2007) (citation omitted); *see also* Fed. R. Crim. P. 44 (providing a general procedure for the Court to assess waiver).

Defendant knowingly, intelligently, and voluntarily waived his right to separate counsel at his initial detention hearing. Judge Patti promptly spent considerable time separately addressing the potential conflict with Defendant and his Codefendant and ensuring that Defendant understood the potential conflict and intelligently and voluntarily waived it [*See* Doc. 102-1 at 5-6]. Through a thorough colloquy, Judge Patti took sufficient measures to ensure that Defendant understood the implications of his waiver, both generally, and at the detention stage. *See* Fed. R. Crim. P. 44(c)(2). Therefore, Defendant's knowing, intelligent, and voluntary waiver is sufficient to avoid a Sixth Amendment violation, and Defendant is not entitled to a new detention hearing on that basis.

### B. No Condition Or Combination Of Conditions Would Reasonably Assure The Safety Of Any Other Person And The Community.

Moving to the substantive detention question, 18 U.S.C. § 3145(b) provides that if a magistrate judge orders a defendant detained pending trial, the defendant "may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the [detention] order." 18 U.S.C. § 3145(b). The district court generally reviews the magistrate judge's order de novo and may do so without holding a further hearing. *See United States v. Marcrum*, 953 F.Supp. 2d 877, 880 (W.D. Tenn. 2013), *aff'd*, No. 13-6008 (6th Cir. Nov. 1, 2013); 18 U.S.C. § 3142(f). An additional hearing is not necessary where, as here, the salient information is already in the record from the initial detention hearing [*See generally* Doc. 102-1 (relying on arguments and proof presented at the detention hearing)]. *See also* 18 U.S.C. § 3142(f);

4

Case 3:24-cr-00071-KAC-JEM    Document 119    Filed 09/09/25    Page 4 of 9    PageID #: 681

*United States v. Williams*, No. 20-cr-142, 2020 WL 6866404, at *2-5 (S.D. Ohio Nov. 23, 2020) (reviewing magistrate judge's detention order de novo without a hearing).

18 U.S.C. § 3142 governs the release or detention of a defendant pending trial. Where, as here, the United States moves for detention of a defendant charged with "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act," 18 U.S.C. § 3142(f)(1)(C), the Court must determine whether any "condition or combination of conditions will reasonably assure the appearance of [the defendant] as required and the safety of any other person and the community," *id.* at § 3142(e)(1), (f). The factors that the Court considers are:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

18 U.S.C. § 3142(g). The Court assesses the pertinent factors on an individual basis. *See* 18 U.S.C. § 3142(f), (g); *see also United States v. Stone*, 608 F.3d 939, 946 (6th Cir. 2010).

Under Section 3142(e)(2), the Court presumes (subject to rebuttal) that "no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community" if the Court finds that "there is probable cause to believe that the [defendant] committed" a qualifying offense under the Controlled Substances Act. 18 U.S.C. § 3142(e)(3)(A). A grand jury's indictment "by itself, establishes probable cause to believe

5

that a defendant committed" the charged offense. *Stone*, 608 F.3d at 945 (citing *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985)). The Parties do not dispute that this presumption applies here [*See* Docs. 102 at 11; 108 at 3]. To rebut the presumption, the defendant must "introduce at least some evidence" that he is not a flight risk and does not pose a danger to the community. *Stone*, 608 F.3d at 945, 947 (noting that the defendant's burden of production is "relatively light").

At the detention hearing, Defendant arguably rebutted the presumption. He presented "pictures" showing that one of several locations where law enforcement found drugs and other evidence in this case—which the United States described as a "stash house"—was really an "apartment building" [*See* Doc. 102-1 at 27-28]. And he argued that there was no evidence connecting him to the apartment where the evidence was found [*Id.*]. Defendant also pointed to his minimal criminal history, which includes a 2018 conviction for "Possession of Heroin," a "felony" punishable "by up to 12 months imprisonment" [*See id.* at 14-15; *see also* Doc. 108 at 4; Doc. 102 at 5]. Defendant thereby arguably satisfied his "relatively light" burden of production to rebut the presumption. *See Stone*, 608 F.3d at 947. Even so, "the presumption favoring detention does not disappear entirely but remains a factor" in the Court's analysis. *Id.* at 945 (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2010) (per curiam)).

Ultimately, the, the United States "must prove risk of flight by a preponderance of the evidence, and it must prove dangerousness to any other person or the community by clear and convincing evidence." *United States v. Hinton*, 113 F.App'x 76, 77 (6th Cir. 2004); *see* 18 U.S.C. § 3142(f). On balance, the United States has met its burden here.

***First***, the nature and circumstances of the offenses charged against Defendant favor detention. The Indictment charges him with, among other things, conspiring with others "to distribute four hundred (400) grams or more of a mixture and substance containing" fentanyl for

6

nearly eighteen (18) months (Count One) and possessing firearms in furtherance of that drug trafficking (Count Four) [Doc. 3 at 1-2]. The Parties agree that Defendant's "prior felony conviction" did not prohibit him from possessing a firearm at the relevant time [*See* Docs. 102 at 12; 108 at 4]. But the Indictment charges Defendant with possessing firearms in furtherance of a conspiracy to distribute 400 grams or more of a substance containing fentanyl. *See* 18 U.S.C. § 3142(g)(1). Fentanyl, even in small amounts can be deadly. And the alleged possession of firearms in support of that drug trafficking makes a dangerous situation even more perilous to Defendant, law enforcement, and the community. At bottom, the offenses lawfully charged implicate the potentially deadly combination of fentanyl and firearms in furtherance and thus suggest a grave threat to the safety of the community. *See Stone*, 608 F.3d at 945.

**Second**, Defendant's alleged conduct in this case confirms the propriety of detention. *See* 18 U.S.C. § 3142(g)(2). This second factor "goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *Stone*, 608 F.3d at 948; *see also United States v. Foster*, No. 20-5548, 2020 WL 6791572, at *2 (6th Cir. July 20, 2020). Here, Defendant is accused of conspiring to distribute substantial quantities of fentanyl as part of a large-scale "multi-state" drug trafficking organization ("DTO") [*See e.g.*, Doc. 102-1 at 20-21]. The United States proffered that the DTO used a main "apartment" to "stash" drugs and that law enforcement found "mail addressed to" Defendant, "4.3" kilograms of fentanyl, and "$47,000 in cash" at the apartment [*Id.* at 10-11, 20-21, 27-28]. Additionally, the United States proffered that the DTO's "secondary house"—where "three" (3) "guns" were recovered—also contained mail addressed to Defendant [*Id.* at 11, 14]. And law enforcement found "a half gram of fentanyl," "cash," and a "handgun" at Defendant's own "home" [*Id.*]. Conspiring to distribute narcotics is inherently dangerous, and the possession of firearms in furtherance of that effort escalates the

7

potential danger. Here, the significant amounts of fentanyl allegedly involved in the conspiracy, along with Defendant's connection to locations where drugs and firearms were found, indicates a direct threat of harm.

***Third***, Defendant's history and characteristics are neutral in the Court's balancing. *See* 18 U.S.C. § 3142(g)(3)(A). Defendant is a twenty-eight (28) year-old originally from Michigan who has resided in Knoxville, Tennessee for the last five (5) years. When arrested, Defendant was the sole member of "Scentsational Candles & Body Butter LLC," out of Michigan [*See* Doc. 102-2 at 1-3]. Defendant also has a connection to his sister and proposed custodian who lives in Detroit [*Id.* at 56]. He has minimal criminal history with his most serious prior offense being "felony" possession of a heroin [*See* Docs. 102 at 12; 102-1 at 14-15]. *See* 18 U.S.C. § 3142(g)(3)(A). However, Defendant was a frequent abuser of marijuana—an act that is unlawful under Federal Law—up until his arrest [Doc. 102-1 at 56]. *See* 18 U.S.C. § 3142(g)(3)(A). And his previous heroin conviction implicates additional involvement with narcotics [*See* Doc. 102 at 5]. *See* 18 U.S.C. § 3142(g)(3)(A). Therefore, the third factor is neutral.

***Last***, Defendant's release would pose a serious danger to the community. *See* 18 U.S.C. § 3142(g)(4). The instant lawful charges and acts Defendant allegedly committed in this case show the risk he would present to the community if released. *See id.* And Congress's direction regarding the rebuttable presumption of detention in these types of offenses remains a factor in the Court's balancing. *See Stone*, 608 F.3d at 945. This factor, thus, supports detention, too. On the current record, and considering the applicable factors, the United States has met its burden to show that "no condition or combination of conditions" of release would "reasonably assure" the "safety of any other person and the community." *See* 18 U.S.C. § 3142(e)(1), (f).

8

Defendant argues that the Court should release him because, among other things, his record includes no violent offenses, he has been self-employed, the instant lawfully-charged offenses were not violent, and he was not a prohibited person under Section 922(g)(1) at the relevant time [Doc. 102 at 5, 12]. But these arguments do not carry the day. Conspiring to traffic fentanyl is inherently dangerous, and the possession of firearms in furtherance of that trafficking presents an even greater danger to the community if released. Defendant's previous conviction for possessing heroin suggests that he is not new to narcotics, and his abuse of marijuana reenforces that point. Whether the Section 922(g)(1) charge in Count Six should ultimately be dismissed, and the Parties seem to agree on that point, does not counter this danger. And the Court would promptly consider any properly-filed motion to dismiss Count Six.

### III. Conclusion

Considering the relevant factors de novo, no conditions of release would reasonably assure "the safety of any other person and the community." *See* 18 U.S.C. § 3142(e)(1). Accordingly, the Court **DENIES** the "Motion for De Novo Review and Revocation of Detention Order" filed by Defendant Jalen McMillian (3) [Doc. 102]. Defendant shall remain detained.

SO ORDERED.

_____
KATHERINE A. CRYTZER
United States District Judge